UNREDACTED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

-------------------------------------------------

UNITED STATES OF AMERICA               )
                                       )
VS                                     )NO.17-cr-10097
                                       )JACKSON, TENNESSEE
JOHN MICHAEL BRILEY                     )
                                       )

-------------------------------------------------

SENTENCING HEARING

JANUARY 30, 2018

BEFORE THE HONORABLE S. THOMAS ANDERSON,

UNITED STATES CHIEF JUDGE

KRISTI HEASLEY, RPR
OFFICIAL COURT REPORTER
U.S. COURTHOUSE, SUITE 450
111 SOUTH HIGHLAND AVENUE
JACKSON, TENNESSEE 38301

UNREDACTED TRANSCRIPT

1                          APPEARANCES

2

3

4     FOR THE UNITED STATES:

5     VIC IVY, ESQ.
      MATTHEW WILSON, ESQ.
6     UNITED STATES ATTORNEY'S OFFICE
      109 South Highland Avenue
7     Suite 300
      Jackson, TN 38301
8

9

10    FOR THE DEFENDANT:

11    LORNA S. MCCLUSKY, ESQ.
      WILLIAM D. MASSEY, ESQ.
12    MASSEY & MCCLUSKY
      3074 East Road
13    Memphis, TN 38128

14

15

16

17

18

19

20

21

22

23

24

25

                    UNREDACTED TRANSCRIPT

1                              EXHIBITS

2                         NO EXHIBITS MARKED

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                           EXAMINATION INDEX

2                         NO TESTIMONY OFFERED

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    (Defendant Present.)

2                    MR. WILSON:  Your Honor, on our next

3    matter, Mr. Massey and Ms. McClusky are here and actually

4    showed up before we started the last hearing.  I've been

5    in court.  If the Court would Grant us a brief recess

6    maybe we can expedite the hearing.

7                    THE COURT:  All right.  Let's take about a

8    10 minute recess, Mr. Bryson.

9                    (Recess Taken.)

10                    THE COURT:  All right.  Our next matter,

11    U.S. versus John Michael Briley, No. 17-10097.

12                    Let's see, who is -- Mr. Ivy.

13                    MR. IVY:  Mr. Wilson is going to be

14    addressing the Court for the government, Your Honor.

15                    THE COURT:  All right.  Mr. Wilson, did

16    you receive a copy of the presentence report?

17                    MR. WILSON:  Yes, Your Honor.

18                    THE COURT:  Who is going to be speaking

19    for Mr. Briley, Mr. Massey or Ms. McClusky?

20                    MS. MCCLUSKY:  I will, Your Honor.

21                    THE COURT:  All right.  Ms. McClusky, did

22    you see a copy of the presentence report?

23                    MS. MCCLUSKY:  Yes, Your Honor, we did.

24                    THE COURT:  Did you have an opportunity to

25    review the report fully and completely with Mr. Briley?

1          MS. MCCLUSKY:  Yes, Your Honor, we did.

2          THE COURT:  Okay.  Let's take a look at

3   the calculations.

4          For the record, Mr. Briley pled guilty to

5   Count 1, identity theft, in violation of 18, U.S.C.

6   Section 1028(a)(7).  That carries a statutory sentence of

7   not more than 10 years imprisonment, not more than

8   $250,000 fine, or both, not more than three years of

9   supervised release, and a $100 special assessment.

10         As far as the calculations, Counsel, I'm

11  looking on Page 7 beginning at Paragraph 23 under

12  Guideline 2B1.1(a)(2).  The base offense level would be a

13  six.

14         At Paragraph 24, under 2B1.1(b)(1)(B),

15  there will be an additional two points added if the loss

16  amount exceeded $6,500, but was less than $15,000.  That

17  would result in an offense level of eight.

18         And, of course, as you can see from the

19  report, there is a recommendation that Mr. Briley should

20  not receive credit for acceptance of responsibility.

21         Now, Mr. Wilson, what is the government's

22  position on that, or do you have a position?

23         MR. WILSON:  Yes, Your Honor.  To make

24  things short, we discussed this, I discussed this with

25  defense counsel on relevant additional guideline

1 provisions.

2          And I believe, I don't want to speak for

3 them, but we're all in agreement that as reflected in the

4 presentence report no reduction for acceptance of

5 responsibility is appropriate.  So I think the

6 presentence report is correct, Your Honor.

7          THE COURT:  All right.  Ms. McClusky, do

8 you want to be heard on that issue?

9          MS. MCCLUSKY:  Your Honor, that is

10 correct.  We did talk about this, and this is what we

11 have agreed upon.

12          THE COURT:  Okay.  Well, then the Court

13 finds -- and I think the report accurately sets forth the

14 reasons why Mr. Briley would not be entitled to credit

15 for acceptance of responsibility.  So there will be no

16 credit under 3E1.1(a) or obviously (b).

17          That results in a total offense level of

18 eight.

19          As far as Mr. Briley's criminal history

20 score on Page 8 at Paragraph 35, he has a zero criminal

21 history score.  That would place him in criminal history

22 category I.

23          Based upon an offense level of eight and a

24 criminal history category of I, the guideline range of

25 imprisonment would be zero to six months.  The period of

1   supervised release would be one to three years.  There is

2   restitution sought in this matter.  In fact, it's my

3   understanding that it either has been or will be paid, of

4   $7,844.72.  The fine range would be $1,000 to $10,000.

5   And there is a $100 special assessment that is mandatory.

6               All right.  Mr. Wilson, any objections to

7   the calculations as stated by the Court?

8               MR. WILSON:  No, Your Honor.

9               THE COURT:  Ms. McClusky, any objections

10  to the calculations as stated by the Court?

11              MS. MCCLUSKY:  No, Your Honor.

12              THE COURT:  All right.  Then, Mr. Wilson,

13  let me hear from you first as far as what sentence you

14  believe would be appropriate for Mr. Briley.

15              MR. WILSON:  Yes, Your Honor.  As a

16  preliminary matter, I've again spoken with the defense,

17  and there were a number of letters I believe submitted to

18  the Court.

19              THE COURT:  There were.

20              MR. WILSON:  Okay.  And in response this

21  morning I forwarded one letter to the Court.

22              But it's my understanding the defense is

23  going to have a request regarding those letters, and I as

24  well.  I'm going to ask the Court to withdraw that letter

25  from consideration.  And if the Court would hear from the

UNREDACTED TRANSCRIPT

1    defense on those --

2                      THE COURT:  Which letter are we talking

3    about?

4                      MR. WILSON:  It was a letter from Dr. Joel

5    Perchik.  Substantially the same information was

6    contained in the presentence report.  Dr. Perchik having

7    addressed the agents and the information, I believe that

8    it's cumulative.

9                      THE COURT:  Okay.  All right.

10                     MS. MCCLUSKY:  Your Honor, again, we have

11   had discussions on this matter with Mr. Wilson and Mr.

12   Ivy.  And we all appreciate that some of the letters

13   reflected strong opinions that may differ with our joint

14   resolution of this case; therefore, we withdraw our

15   letters.

16                     THE COURT:  All your letters?

17                     MS. MCCLUSKY:  Yes, Your Honor.

18                     THE COURT:  Okay.  All right.

19                     Go ahead, Mr. Wilson.  Where are you then?

20                     MR. WILSON:  Yes, Your Honor.  Regarding a

21   sentence, the defendant having pleaded guilty to a felony

22   offense, we believe that the guidelines are correctly

23   calculated, ask the Court to impose a guideline sentence

24   and submit it to the Court for the Court's discretion.

25                     THE COURT:  All right.  Ms. McClusky.

1          MS. MCCLUSKY:  Thank you, Your Honor.

2          As a housekeeping matter, I would like to

3   introduce the Court to members of his family and

4   community of friends and associates that are here today.

5          THE COURT:  Okay.

6          MS. MCCLUSKY:  His mother and father, Mary

7   Nell and David Lynn Briley.

8          THE COURT:  If you'll raise your hand when

9   she identifies who you are.  Okay.

10         MS. MCCLUSKY:  That's Mary Nell and David

11  Lynn Briley.  His sister Ray Fuller is here.  Dr. Colleen

12  Conway Welch, who is the Dean Emerita of Vanderbilt

13  University is here.  Dr. Robert Hollis, who is the Chief

14  of GI at Western Tennessee Healthcare is here.  Judy

15  Dorris, his 10 grade English teacher is here.  Jeff

16  Schneider from the Madison County Sheriff's Department is

17  here.  Richard Staples, who is the retired Chief of

18  Police for Jackson, Tennessee.  Pat and Harry Hardwick

19  who are patients.  Bob and Sharon Herrindon who are also

20  patients.  I was introduced to Mr. Jones.  But, Your

21  Honor, I cannot remember his first name.

22         MALE VOICE:  Tod.

23         MS. MCCLUSKY:  Tod.  I'm sorry.  He has

24  also been a patient.

25         Shanie Garcia was his first grade

UNREDACTED TRANSCRIPT

1   girlfriend.  She is here, Your Honor.  As well as James

2   Mayo, a Professor of English Literature.

3                   THE COURT:  Okay.  Thank you.

4                   MS. MCCLUSKY:  Your Honor, under the 3553

5   considerations the Court must look at the nature and

6   circumstances of the offense.

7                   Certainly it's serious.  It's a fraud.

8   And if violated Federal law.  It is non violent.  The

9   losses are not astronomical, but they remain very

10  important.

11                  Looking at the history and characteristics

12  of Mr. Briley.  He is a man who has been dedicated to his

13  family and his clinical practice.  He has received a

14  number of accolades over the years.

15                  And we have discussed these with the

16  government, Your Honor, and they have no objection to our

17  discussion of these.

18                  He was the Outstanding First Year Student

19  at Vanderbilt University in 1991.  He was a Tennessee

20  Delegate to Washington, D.C.,  American Nurses

21  Association in 1995.  He has made seven trips at his own

22  expense to Egypt to administer immunizations to children.

23  He was the Practitioner of the Year in 1997, voted so by

24  the American Association of Nurse Practitioners.  He

25  received the President's Award from President George Bush

1    in 2002.  He was submitted as a candidate by Vanderbilt.

2    He received the Chancellor's Award from Vanderbilt in

3    2004.  He was Alumni of the Year at U.T. Memphis in 2008.

4    He was President of Vanderbilt's University Scholarship

5    Committee from 2000 to 2013.

6              He was an Associate Professor of Nursing

7    at Freed-Hardeman University from 2006 to 2008.  He was

8    the Assistant Professor of Anatomy at Freed-Hardeman in

9    2006.  He was their campus health officer from 2005 to

10   2008.  He served the state of Tennessee as Chair of the

11   Government Affairs Committee from 2006 to 2010.

12             Looking at the need for the sentence

13   imposed to reflect the seriousness of the offense.  When

14   we look at the nature and circumstances we certainly see

15   it's serious.  The collateral damages in this case,

16   however, is not as great when compared overall to what

17   the Court has seen.  But that does again not back away

18   from the seriousness of this situation.

19             Promoting respect for the law.  Look what

20   happened to Mr. John Michael Briley.  His actions

21   destroyed his practice.  He lost his license.  He lost

22   his income.  He hurt his family, friends and patients.

23   He hurt his community.

24             Respect for the law and rule of his

25   profession have become a part of his very being.  He has

1   seen what error does.  Look what happened.  His respect

2   for the law assures that it will never happen again.

3               Just punishment.  Under the guidelines

4   just punishment is viewed as a sentence of no

5   incarceration.

6               What we're asking for, Your Honor, is time

7   served and one year of supervised release.

8               To afford adequate deterrence.  Any member

9   of the medical community who would not be deterred by the

10  public humiliation, the loss of his license, the loss of

11  his clinic, the loss of income, and the embarrassment to

12  his friends and family and patients will not be deterred

13  by a particular sentence.  A person who wouldn't be

14  deterred by what has happened over him, to him over the

15  last four years, I think, Your Honor, is a person who

16  cannot be deterred.  They only have to see what happened

17  to John Michael Briley already to be sufficiently

18  deterred.

19              To protect the public from further crimes

20  of the defendant.  This man will not be a risk to the

21  public.  The lesson has been painfully learned.  He's

22  been humbled.  He has watched others suffer because of

23  his actions.  For a man whose life dream was to help, he

24  has had to admit he harmed.  The lesson has indeed been

25  learned.

1           To provide the defendant with needed

2   educational, vocational or medical services.  The

3   sentence would not avail him any of those.  He's a

4   professional, he's educated himself.  He could not --

5   there is no need to use the public expense any further

6   for him.

7           The kinds of sentences available.  The

8   guidelines tells us zero to six months.  As to a

9   pertinent policy statement, I know of none other than the

10  guidelines.  And the guidelines offer such a low

11  sentence, and we are actually asking for time served.

12          To avoid unwarranted sentencing

13  disparities.  I think we're safe in saying that given the

14  government's position in this case and the loss amount,

15  the sentence requested is not dispared.

16          The need to provide restitution.  He's

17  already given us $7,500.  I think early on we weren't

18  sure what the final amount would be.  So we have a check

19  for $7,500.  He will pay the additional $344.72 before he

20  leaves the building today, Your Honor.

21          The medical community is willing to give

22  Mr. Briley another chance.  If he's placed on probation

23  they will not give him that chance.  A sentence of time

24  served with one year of supervised release gives promise

25  to that chance.

1                    Thank you, Your Honor.

2                    THE COURT:  All right.  Thank you, Ms.

3    McClusky.

4                    Mr. Briley, would you like to make any

5    statements?  You are not required to, but I will be glad

6    to hear from you if you would like to say anything.

7                    THE DEFENDANT:  Yes, Your Honor, if you

8    don't mind.

9                    THE COURT:  Come up to the podium, please.

10                   THE DEFENDANT:  Thank you, Your Honor, for

11   giving me this chance to talk to you.  And I want you to

12   know that I am so sorry.  And this will never happen

13   again, I promise.  I will make this right.  And I will

14   put my, make my family and medical community who put

15   trust in me proud of me once more, as I have for 25

16   years.  I will make you proud of me as well.  I

17   apologize, Your Honor, for my actions, sincerely

18   apologize.

19                   And I apologize to all those here today,

20   my patients, family, friends and associates.  And I want

21   to thank you.

22                   THE COURT:  All right.  Thank you,

23   Mr. Briley.

24                   Mr. Wilson, do you want to respond in any

25   way?

1          MR. WILSON:  No, Your Honor.

2          THE COURT:  Anything else, Ms. McClusky?

3          MS. MCCLUSKY:  I want to make sure that I

4    made it clear to the Court that if he got probation the

5    medical community will not relicense him.

6          THE COURT:  Yeah, I think I understand

7    where you are coming from.

8          MS. MCCLUSKY:  Thank you, Your Honor.

9          THE COURT:  All right.

10          Mr. Briley, and I'm sure that Mr. Massey

11   and Ms. McClusky have gone over this with you.  In fact,

12   Ms. McClusky addressed most of the factors, if not all

13   the factor that I'm required to consider in deciding what

14   the Court believes would be an appropriate sentence for

15   you in this case.

16          I'm going to briefly go over those again

17   just for your information.  We refer to these as the

18   Section 3553 factors.  And I'm instructed to consider

19   these factors in fashioning a sentence that I believe is

20   appropriate in any given case.

21          3353 states that the Court should consider

22   the following factors.

23          The nature and circumstances of the

24   offense and the history and characteristics of the

25   defendant.  The need for the sentence imposed to reflect

1    the seriousness of the offense.  To promote respect for

2    the law, and to provide just punishment for the offense.

3                    It should also afford adequate deterrence

4    to criminal conduct, protect the public from further

5    crimes that you might commit, and provide you with any

6    needed educational or vocational training, medical care,

7    or other correctional treatment in the most effective

8    manner.

9                    So I will be considering those factors and

10   taking them into consideration in deciding what I believe

11   is an appropriate sentence in your case.

12                   For the record, I adopt the presentence

13   report as the factual findings of the Court in this

14   matter.  To briefly summarize some of the more pertinent

15   information, it appears that on November 18th of 2015, a

16   Federal Grand Jury sitting here in the Western District

17   of Tennessee returned what turned out to be a 424 count

18   indictment against Mr. Briley.

19                   It appears from the report that on

20   November 28th of 2016, this matter proceeded to trial.

21   However, because of unforeseen circumstances, a mistrial

22   was declared shortly into the trial that was taking

23   place.  Thereafter, on November 14th of 2017, Mr. Briley

24   appeared before this Court and pled guilty to one count

25   of an information.

1          As I've already stated, Mr. Briley pled

2     guilty to identity theft, in violation of 21, United

3     States Code, Section 1028(a)(7).

4          In looking at the background, what is

5     referred to as the offense conduct, the report states and

6     indicates that beginning on or about August 19th of 2014,

7     the field office, the Nashville field office of the

8     Office of the Inspector General received information that

9     Mr. Briley, a nurse practitioner in Jackson, Tennessee,

10    was forging the signature of Dr. Joel Perchik, a

11    radiologist, on orders and plans of care for home health

12    services of Medicare patients.

13         The complainant also identified two other

14    physicians whose identities may have been stolen and used

15    by Mr. Briley to order home health services without the

16    physicians' knowledge or authorization.  After receiving

17    the complaint, the Federal Bureau of Investigation joined

18    in the investigation of Mr. Briley.

19         At that time Mr. Briley owned and operated

20    a clinic in Jackson, Tennessee, known as the Primary Care

21    Specialists South, Incorporated.  And it indicates in the

22    report that it was primarily an internal and family

23    medicine practice.

24         Mr. Briley was a nurse practitioner.  And

25    as such, regulations required him to have a sponsoring

1   physician who spent at least 20 percent of the office

2   hours in the practitioner's office.  Since Mr. Briley was

3   a nurse practitioner, he was not authorized to sign off

4   on home health services that were to be paid by Medicare

5   or Medicaid.

6           As part of the investigation Dr. Joel

7   Perchik was interviewed.  According to Dr. Perchik, in

8   2006 he offered to temporarily be Mr. Briley's sponsoring

9   physician.  However, in 2010 Dr. Perchik received a home

10   health care form at his office.  He stated that he has,

11   as a radiologists he has consistently not authorized

12   services and had never authorized Mr. Briley to sign on

13   his behalf.  At that time Dr. Perchik contacted

14   Mr. Briley, who advised the doctor that it was a mistake.

15           A few months later Dr. Perchik received

16   another form.  And again he contacted Mr. Briley and

17   informed Mr. Briley that he was not his sponsoring

18   physician.

19           As part of the investigation, FBI agents

20   requested and obtained Mr. Briley's enrollment and

21   billing from Medicare from 2010 until approximately

22   August of 2014.  Agents interviewed each of the

23   physicians and showed them for which patients Medicare

24   identified them as having ordered home health services.

25   And again Dr. Perchik confirmed that he had never ordered

1    any home health services.

2              In June of 2015, Mr. Briley was indicted

3    by a Federal Grand Jury on one count of aggravated

4    identity theft, and 145 counts of false statements

5    relating to healthcare matters.  Again, this all relates

6    back to the forgery of Dr. Perchik's signature.

7              As the agents continued to pursue their

8    investigation, they began to get into the billing

9    practices of the clinic.  Specifically, they interviewed

10   employees and former employees of the clinic.  They got

11   into an investigation involving the number of x-rays that

12   were performed and were billed for.  And ultimately they

13   determined that there were a substantial number of x-rays

14   that had allegedly been performed which were not.  And in

15   many cases there had been billing for those x-rays, even

16   though they had not been performed.

17             On August 13th of 2015, a subpoena was

18   served on Mr. Briley's attorney.  The subpoena demanded

19   approximately 475 patient charts, including any and all

20   x-rays, progress notes, interpretation reports, and other

21   documentation to determine whether x-ray services had

22   actually been performed.

23             Mr. Briley provided partial copies of all

24   but approximately 47 charts.  And Mr. Briley indicated

25   that those 47 charts had either been lost or stolen.  For

1   all the approximately 475 patient charts that Mr. Briley

2   provided, there were no x-ray images.

3                    At that point, again the agents pursued

4   their investigation of these x-rays and the billing

5   practices there.  Ultimately, on March 29th of 2016,

6   agents executed a Federal search warrant on Primary Care

7   Specialists South, Incorporated.

8                    At that time they located approximately 30

9   of the 47 charts that Mr. Briley had represented to the

10  agents that had been lost or stolen.  So he

11  misrepresented to the agents the status of those lost or

12  stolen records.

13                   Ultimately it was determined that

14  Mr. Briley had received payment for 277 x-ray services

15  that never actually took place.  And that constituted,

16  based on the best available evidence at the time, that

17  there was an amount of restitution owed of $7,844.72.

18  Again, that's somewhat of a, just of an estimate number,

19  because the report indicates that x-ray services were

20  billed at different rates.  They could range anywhere

21  from $18 to $41 to $65.

22                   So the amount was somewhat speculative.

23  But it appears that the government has agreed to that

24  amount, and Ms. McClusky has indicated that they're not

25  opposing that.

1          So those are the circumstances that bring

2    Mr. Briley before the Court.

3          Now in this matter, as I've already

4    stated, there is no criminal history points, so there is

5    no other criminal history.  Mr. Briley has no other

6    criminal history in his background.

7          As far as the other information provided

8    in the report, it indicates that he was born in August of

9    1969.  He indicated that he had what he referred to as a

10   perfect childhood.  He stated he grew up on a farm with

11   very loving parents and many family members who were his

12   neighbors.  So certainly he was fortunate to have a very

13   good childhood.

14         He reports that he has never been married

15   and has no children.  As far as his physical condition,

16   he does indicate that he suffers from recurring kidney

17   stones, and that's something that he has been receiving

18   care for.

19         As far as his mental and emotional health,

20   he reported no history of mental and emotional or mental

21   illness.  However, he did advise that in 2013 he did

22   begin experiencing depression and anxiety that was due in

23   large part to his profession and to his job.

24         As far as substance abuse, Mr. Briley

25   asserts and claims and states that he has never abused

1    alcohol and he has never used any other type of

2    medication, other than that which was prescribed by a

3    physician.

4               He self-reported to the Tennessee

5    Professional Assistance Program regarding his depression

6    and anxiety.  And as a result of that, he underwent a

7    nine day evaluation at Bradford Health Services in

8    Alabama.

9               As a result, and as a part of this whole

10   process, he ultimately reported to Cumberland Heights

11   here in Jackson.

12              I do need to state that Mr. Briley has

13   indicated that he has, in his opinion and his belief, and

14   based upon his own knowledge, he has no substance abuse

15   problems.  However, he did cooperate with what was

16   recommended.  He ultimately ended up going through what

17   amounted to about a 60 to 90 day program.  Ultimately, I

18   think it's a correct statement that it was concluded that

19   he did not have a drug related problem that was noted in

20   any way.  And so he cooperated fully with that part of

21   the situation.

22              As far as his education, he graduated from

23   South Side High School here in Jackson.  Attended

24   Freed-Hardeman University, graduated with a Bachelor's

25   Degree in Bible and Biology in 1991.  He received his

1    Master's Degree in Nursing from Vanderbilt University in

2    1995.  He enrolled at the University of Tennessee Health

3    Sciences in 2003, and received his Doctorate or Doctor of

4    Nursing Practice, Doctor and Doctorate of Nursing

5    Practice in 2006.

6                   It appears that at that time is when he

7    opened Primary Care Specialists South in Jackson,

8    Tennessee.  And he was employed there between 2006 and

9    2014.

10                  As far as his financial condition, I'm not

11   going to go over all of that.  I'm just going to simply

12   conclude that based upon the information provided in the

13   report -- and, Counsel, you can -- obviously, I'm sure

14   you've already examined it.  It's Paragraph 52 on Page 11

15   of the report.  It basically concludes that Mr. Briley

16   has a negative net worth based upon what has happened to

17   him, and also has a negative monthly cash flow.

18                  On Page 12 at Paragraph 53, are a number

19   of debts that are owed, that are outstanding.  And,

20   again, because of this situation, it's the Court's

21   understanding and belief that Mr. Briley has lost his

22   license and has not been allowed to engage in his

23   profession.

24                  So those are the circumstances that bring

25   Mr. Briley before the Court.

1            Now I'll have to say that I read all the

2    letters that were submitted.  Now that they have been

3    withdrawn, I guess I won't refer to those.  But it's sort

4    of like you know something, but you can't utilize it, I

5    guess is the best way to say it.

6            I will say, and I think it would be a fair

7    statement, based on the number of people who are in court

8    today, that it appears to the Court, at least, that

9    Mr. Briley has a large cross-section of people who have

10   faith and confidence in him and who believe in him.

11   However, that's one aspect of looking at it.

12           This is a serious offense.  Mr. Briley,

13   I -- you know, one thing I haven't heard yet and still

14   don't know, is what precipitated you engaging in this

15   particular conduct.  And I don't want you to address

16   that, I'm just talking now.

17           Obviously, the assumption is you engaged

18   in this type of conduct for financial gain.  That would

19   be the logical assumption.

20           But when I review the entire matter, your

21   situation is a little different than some that come

22   before this Court.  Unfortunately, the Court is having to

23   deal more and more with these types of cases, these types

24   of Medicare and Medicaid fraud.  And unfortunately, in

25   the Court's opinion, they are becoming more commonplace.

1   And ultimately when that happens, then obviously the tax
2   payers of the country are the ones that ultimately are
3   ripped off.  And that causes me a great deal of concern.
4                So I have to try to balance that aspect of
5   this case against the fact that Mr. Briley has a large
6   number of friends and family who believe strongly in him.
7   Again, since the letters have been withdraw, I'm not
8   going to refer to those.  But by the number of people in
9   court today that indicates to me that that's still the
10  case.
11               As I mentioned earlier, the offense level
12  here is eight, the criminal history category is I.  The
13  guideline range of imprisonment is zero to six months.
14  The period of supervised release is one to three years.
15  I don't believe that Mr. Briley is in a position to pay a
16  fine, based upon his financial report.
17               And Ms. McClusky has already indicated
18  that they have funds, I assume in your escrow account, to
19  pay a majority of the restitution.
20               MS. MCCLUSKY:  Yes, Your Honor, we have
21  $7,500 check today.  That will pay off the --
22               THE COURT:  That is going to be taken care
23  of in due course.
24               Considering everything, and considering
25  the factors under Section 3553 -- Mr. Briley, I've got to

1    tell you that for those of us who do this every day, the

2    people sitting at counsel table, Mr. Massey,

3    Ms. McClusky, the people from the government, and myself,

4    cases like yours are oftentimes harder than some of the

5    others.  What makes it harder is because you do have a

6    lot of support.

7              You have done a lot of good things for the

8    community.  From what I can tell from the report and from

9    what Ms. McClusky has said as part of her argument, you

10   have been a very kind and compassionate and

11   community—oriented person.  You've tried to assist others

12   when you could.  So there are a lot of good things to

13   consider about where you are and why we're here.

14             Then there is the other side.  Again, I

15   often wonder what motivates someone in your position to

16   think that they can engage in the kind of conduct that

17   you engaged in, and there won't be very serious and

18   detrimental repercussions from that.  But I can't get

19   inside your mind.  I can't determine that.  I just have

20   to go on the record that's before me.

21             I can tell you that if I just read a cold

22   record, the logical conclusion as far as I'm concerned

23   would be that a period of incarceration would be

24   appropriate for you.  And I'm still not sure that it's

25   not.

1          Remember when I went over the 3553

2     factors, one of the primary factors that we consider is

3     what we call promote respect for the law.  And so other

4     people are going to be looking at what happens to you.

5     And it may or may not, I don't know whether it influences

6     what other people do.

7          But certainly because you're a

8     professional and you come into court under these

9     circumstances, it's certainly reasonable to assume that

10    other people would look at what happens to you.  And it

11    might or might not influence their conduct and decisions

12    that they make on whether to comply with the law or

13    whether to engage in activity that may be contrary to the

14    law.

15         At any rate, considering everything that I

16    have gone over, considering the factors under 3553,

17    Mr. Briley, I'm going to sentence you as follows.

18         I'm going to sentence you to time served.

19    I'm not going to require you to serve any additional

20    period of incarceration.  However, I am going to impose a

21    period of supervised release of two years.

22         During the time that you are on supervised

23    release the following conditions will be in place.

24         You shall be required to participate in

25    drug and alcohol testing and treatment if deemed

1    necessary by your probation officer.

2              You shall be required to make full

3    financial disclosure to your probation office, and shall

4    provide the probation office access to any requested

5    financial information, including your tax returns and

6    credit checks.

7              You shall not own, have an ownership

8    interest in, or operate a medical business or sole

9    proprietorship providing medical services during the

10   period of time of your supervised release.

11             You may not hold employment as a nurse

12   practitioner if you acquire your, if you reacquire your

13   licensure with employment subject to approval by the

14   probation office.

15             Do you understand what I'm saying there?

16             Do you understand that, Ms. McClusky?

17             If he can obtain his license --

18             MS. MCCLUSKY:  Yes.

19             THE COURT:  -- than any type of employment

20   that he's going to pursue must be approved by the

21   probation office.

22             MS. MCCLUSKY:  And that employment could

23   be to then open his own clinic.  Because earlier -- I

24   just want to make sure --

25             THE COURT:  Well, what do you think,

1    Mr. Wilson?  What is your position?

2                    MR. IVY:  Judge, obviously, I mean, we're

3    here on a criminal case, we're not the medical board, as

4    to what he can and can't do.

5                    Of course, if the Court orders him not to

6    open his own clinic -- I think we get right back into the

7    same situation of supervision that we ran into before.

8    So I think we would have a problem with that.

9                    MS. MCCLUSKY:  I'm not sure what that --

10                    THE COURT:  Well, what it comes down to,

11   Ms. McClusky, is -- you know, under these circumstances I

12   would normally not allow Mr. Briley to open a business,

13   because his history indicates that's not going to be a

14   productive way for him to proceed.

15                    MS. MCCLUSKY:  In this case, Your Honor,

16   the board has had this gentleman under their thumb and

17   under the microscope for four years.  They have been

18   watching him and talking to him on a regular basis.  He's

19   been sent to this clinic and he's been sent to that

20   clinic.  He has done exactly as they have commanded.

21                    Now the medical board is the one who

22   really must protect their view as far as what the public

23   sees.  They are the ones that take a great risk when they

24   allow someone to be relicensed.

25                    I would respectfully submit to this Court

1   that their decision to relicense him shows full faith in

2   his ability to run a clinic henceforth without the

3   problems that were there before.

4                I suggest to Your Honor that if you

5   will -- if they approve him, and then the probation

6   officer understands under which -- and they may put some

7   parameters around him for the first couple of years, to

8   say meeting regularly with financial advisers, talking

9   with members of the board.  I think with those parameters

10  we would know that he truly, as we have said, will not be

11  a danger to the public.

12               But I think the board's decision and the

13  ramifications for the board to wrongfully relicense

14  someone let's us feel comfortable allowing him to open

15  and operate a clinic.

16               MR. IVY:  Judge, and I think the key to

17  what Ms. McClusky says is supervision.  And the Court

18  already stated that, subject to the approval of the

19  probation office.  So if the board should approve that,

20  and the probation office, then so be it.  But I think it

21  has to be approved by this Court through the probation

22  office.

23               THE COURT:  Well, are you -- be sure I'm

24  understanding, Mr. Ivy.

25               Are you agreeable for him to open a sole

32

1   practice office if he's under supervision?

2               MR. IVY:  And I understood the Court to

3   start with, that for him not to open a sole --

4               THE COURT:  Well, that's what I said.  But

5   that's why I'm trying to decide if I need to amend that

6   in any way.

7               I have real concerns about Mr. Briley

8   opening a sole practitioner office.

9               MR. IVY:  And we do too, because of the

10  supervision.  Same situation that we got into that got us

11  here.  So that's where we are.

12              MS. MCCLUSKY:  But with supervision --

13  it's my understanding that with supervision they would be

14  comfortable.  I think with --

15              THE COURT:  Well, they would be

16  comfortable, Ms. McClusky -- excuse me for interrupting

17  you.

18              But they would be comfortable with him

19  working for someone else, and not being -- what this

20  condition as we've crafted it says, he shall not own or

21  have an ownership in, or operate a medical business or

22  sole proprietorship providing medical services during the

23  term of his supervised release.

24              He can work for someone else under

25  supervision.

1           MS. MCCLUSKY:  He has, owes a lot of

2    money.  Could I have a minute to talk with him about

3    this?

4           THE COURT:  Sure.

5           MS. MCCLUSKY:  Because it all may be -- if

6    he's not allowed to practice...

7           THE COURT:  We are not talking about him

8    not being allowed to practice.  We're talking about him

9    not having an ownership interest in, or having a sole

10   proprietorship where he's in charge and running it and

11   maintaining a sole practice.

12          MS. MCCLUSKY:  May I have a moment, Your

13   Honor?

14          THE COURT:  Okay.

15          (ATTORNEY/CLIENT CONFERENCE.)

16          MS. MCCLUSKY:  Your Honor, I'm informed

17   that per the board's requirements, if he's licensed he

18   will have to have another nurse practitioner there on

19   site.  They've already made arrangements for that nurse

20   practitioner.  And he has to have physician oversight.

21          They have gotten with the Director of

22   Quality Care.  And that is Dr. Peter Gardner.  And Dr.

23   Peter Gardner says that he will be the physician and he

24   will be on site once a week to review everything.

25          THE COURT:  No.  I'm not going to go with

34

1  that.

2              This is the condition.  Mr. Briley shall

3  not own, or have an ownership interest in, or operate a

4  medical business or sole proprietorship providing medical

5  services during the period of supervised release.

6              He may hold employment as a nurse

7  practitioner, if he reacquires his license, with any

8  employment subject to the approval of the probation

9  office.  All right.

10              Are we clear?

11              MS. MCCLUSKY:  Yes, Your Honor, we are.

12              THE COURT:  Ms. McClusky, if I'm

13  understanding what you were representing based on your

14  conversation with Mr. Briley, he was going to be back in

15  a circumstance where he was going to still be the

16  proprietor of a practice.  And I think you said Dr.

17  Gardner or someone was going to be the supervising

18  physician, as I understood what you're saying.

19              MS. MCCLUSKY:  Yes, sir.

20              THE COURT:  But I think the concern here

21  for me or for the Court is just simply, this is what got

22  us here to start with.  We're talking about a two year

23  period of time where Mr. Briley cannot own an interest in

24  a medical practice, cannot have a sole practice.  He's

25  got to be working under the direction of someone else and

1    subject to the approval of the probation office.

2              MS. MCCLUSKY:  My client has told me to

3    back off.  He said he's fine with that.

4              THE COURT:  All right.

5              MS. MCCLUSKY:  So I will...

6              THE COURT:  You will take your client's

7    advice.

8              MS. MCCLUSKY:  I'll sit down.

9              THE COURT:  All right.

10             Next condition.  Mr. Briley shall be

11   required to submit to third party risk notification.

12             Ms. McClusky and Mr. Massey, I assume you

13   will explain that to Mr. Briley.  I don't need to go into

14   any more detail.

15             MS. MCCLUSKY:  Yes, sir.

16             THE COURT:  He shall be required to

17   cooperate in the collection of DNA.

18             The last requirement on possession of

19   firearms, does that apply in this case?

20             MR. WILSON:  He's a convicted felon, Your

21   Honor.

22             THE COURT:  Okay.  All right.  Cannot

23   possess or own -- Mr. Briley, you cannot have in your

24   possession any kind of firearm or dangerous weapon.

25             As I've already stated, I'm not going to

1  impose a fine.  I don't believe that Mr. Briley has the

2  resources to pay a fine.

3                    Restitution will be in the amount of

4  $7,844.72.

5                    And based upon the representations made by

6  counsel, I will just say that the full amount shall be

7  paid within 72 hours of this hearing.

8                    And there will be a $100 special

9  assessment which shall be mandatory and due and payable

10  immediately.

11                    All right.  Mr. Wilson, anything else we

12  overlooked?

13                    MR. WILSON:  Well, Your Honor, regarding

14  the restitution, I have a breakdown provided by

15  investigating agent in the case as to which sub-entities

16  that is to go to.  I've communicated with Mr. Massey, I

17  believe we're in agreement, as to whom those payments

18  will be made.

19                    In Judge Breen's court I've worked with

20  Officer Long.  He provides that information to the clerk

21  and then it is distributed per the restitution once it's

22  paid to the clerk's office.  So I will provide that to

23  Officer Long.  And if there is any further follow-up on

24  that, I will address that with the Court.

25                    THE COURT:  Well, I am also going to ask

UNREDACTED TRANSCRIPT

1   you, if you will, Mr. Wilson, also provide that to

2   Mr. Bryson.  I want it included in the judgment, so that

3   it's clear what, who is to be paid what and make sure

4   that we handle that accordingly.

5                    MR. WILSON:  Yes, Your Honor.

6                    THE COURT:  All right.  Anything else,

7   Mr. Wilson?

8                    MR. WILSON:  Your Honor, the defendant --

9   the judgment becoming final in this case, I would move to

10  dismiss the, all indictments in Case No.  15-cr-10046

11  regarding Mr. Briley.

12                   THE COURT:  All right.  I will grant that

13  motion and those charges will be dismissed.

14                   Anything else from the government?

15                   MR. WILSON:  No, Your Honor.

16                   THE COURT:  All right.  Ms. McClusky,

17  anything from you?

18                   MS. MCCLUSKY:  No, Your Honor.

19                   THE COURT:  All right.  Are you waiving at

20  me, Mr. Briley, or do you want to say something?

21                   THE DEFENDANT:  I'm just saying thank you.

22                   THE COURT:  Well, let me address one other

23  thing with you, Mr. Briley.

24                   I also received as part of all the reports

25  and documentation that the Court receives prior to coming

1    out here today, I also received what is referred to as a

2    release status report.

3                    And that release status report indicates

4    that while you were on pre-trial supervision you failed

5    to report to pre-trial services on four separate

6    occasions.  September of 2015, May of 2016, October of

7    2016 and September of 2017.

8                    The report also indicates that you were

9    reprimanded by pre-trial services and reminded that as a

10   condition of your bond that you were required to make

11   these monthly meetings.

12                   Now I point that out simply, Mr. Briley,

13   to make it as clear as I know how that the conditions

14   that I've imposed upon you you must follow literally.  If

15   you have any questions about what your obligations are or

16   what your responsibilities are, then certainly Ms.

17   McClusky or Mr. Massey are more than capable of advising

18   you on how you need to proceed.  But as well, the

19   probation officer is available and will do likewise.

20                   But it is of utmost importance that you

21   comply with every condition, and that you do so without

22   exception.  Do you understand?

23                   THE DEFENDANT:  Yes, sir, I promise.

24                   THE COURT:  Well, you need to know if you

25   don't, if you don't comply with these conditions, then

UNREDACTED TRANSCRIPT

39

1    what will happen is I will receive a report indicating

2    that you have not complied.  We'll come back to court --

3    and you escaped incarceration this time, so you need to

4    remember that.

5                     Do you understand?

6                     THE DEFENDANT:  Yes, sir.

7                     THE COURT:  All right.  Mr. Wilson, any

8    objection to the sentence imposed or the method utilized

9    by the Court in arriving at its calculations?

10                    MR. WILSON:  No, Your Honor.

11                    THE COURT:  Ms. McClusky, any objection to

12   the sentence as imposed or the method unitized by the

13   Court in arriving at its calculations?

14                    MS. MCCLUSKY:  No, Your Honor.

15                    THE COURT:  All right.  That will be the

16   judgment of the Court.

17                    Thank you.  Good luck, Mr. Briley.

18                    THE DEFENDANT:  Thank you.

19                    (End of Proceedings.)

20                    (End of Requested Material.)

21

22

23

24

25

UNREDACTED TRANSCRIPT

40

1          I, Kristi Heasley, do hereby certify that the

2   foregoing 39 pages are, to the best of my knowledge,

3   skill and ability, a true and accurate unredacted

4   transcript from my stenotype notes in the matter of:

5

6

7   UNITED STATES OF AMERICA

8                                        )
    VS                                   )NO.17-cr-10097
9                                        )JACKSON, TENNESSEE
    JOHN MICHAEL BRILEY                  )
10

11

12          Dated this 21st day of February, 2018.

13

14

15

16   ----------------------------------
    Kristi Heasley, RPR
17   Official Court Reporter
    United States District Court
18   Western District of Tennessee
    Eastern Division
19

20

21

22

23

24

25

                       UNREDACTED TRANSCRIPT